IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GREGORY M. MAKOZY, SR.,

    Defendant.

Criminal No. 15-0184
ELECTRONICALLY FILED

## MEMORANDUM OPINION AND ORDER

Defendant ("Makozy") has filed a Motion to Vacate under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. See doc. no. 97.[1] In addition to the Motion to Vacate, Makozy also filed his third Motion to Stay Sentence.[2] See doc nos. 63, 91, and 99. The Government has filed a singular Response to the two pending Motions – the § 2255 Motion and the Motion to Stay Sentence. Doc. no. 103. Defendant has filed a singular Reply. Doc. no. 107. These matters are now ripe for adjudication.

### I. Defendant's § 2255 Motion

    **A. Standard of Review**

        **1. Evidentiary Hearing**

When a Petitioner brings a motion to vacate sentence pursuant to Section 2255, the District Court has discretion whether to conduct an evidentiary hearing. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (citing *United States v. Booth*, 432 F.3d 542, 545 (3d Cir.

---

[1] Defendant previously filed a Motion under U.S.C. § 2255 in an untimely fashion, while his appeal was pending before the United States Court of Appeals for the Third Circuit. See doc. no. 88. This Court denied Defendant's "original" § 2255 Motion (doc. no. 88) as moot noting that the Court lacked jurisdiction over the matter given Defendant's pending appeal. Doc. no. 87. Defendant later filed an "Amended" Motion under 28 U.S.C. § 2255. See doc no. 93. The Court also denied Defendant's "Amended" § 2255 Motion as untimely, because his 90-day time period to file a Writ of Certiorari from the date of judgment by the United States Court of Appeals for the Third Circuit had not expired. See doc. no. 94. However, the Court denied Defendant's "Amended" § 2255 Motion without prejudice to refile at the appropriate time. Hence, the instant § 2255 Motion is now appropriately before this Court.

[2] The Court denied Defendant's two prior Motions to Stay his 30-month term of imprisonment. See doc. nos. 68 and 92.

2005)). However, the District Court is required to hold an evidentiary hearing on a motion to vacate sentence unless the motion and files and records of the case show conclusively that the movant is not entitled to relief. *Id.* (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). This is not a high bar for a movant to meet, especially since the Court, in considering a Section 2255 claim, "'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Id.* (quoting *Forte*, 865 F.2d at 62); see also Rules Governing § 2255 Proceedings, Rules 4 and 8.

Thus, a Section 2255 Motion "'can be dismissed without a hearing [only] if: (1) the [movant's] allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). A district court's decision not to hold an evidentiary hearing may be reversed for abuse of discretion if "the files and records of the case are inconclusive on the issue of whether [the] movant is entitled to relief." *Id.* at 131 (citing *Solis v. United States*, 252 F.3d 289, 294-95 (3d Cir. 2001)).

**2. Section 2255**

Section 2255 of Title 28 of the United States Code provides that:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Further, and as noted above, Section 2255 provides that the Court shall grant a prompt hearing unless Petitioner's Motion to Vacate, the files, and the records in this case "conclusively show that the prisoner is entitled to no relief[.]" *See* 28 U.S.C. § 2255(b).

Notwithstanding the above, it is important to note that "a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). "Indeed, relief under § 2255 is available only when the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and ... 'present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent.' " *Id.,* (*quoting Davis v. United States*, 417 U.S. 333, 346, (1974) (*quoting Hill v. United States*, 368 U.S. 424, 428, (1962)).

### 3. Ineffective Assistance of Counsel

The standard of review for ineffective assistance of counsel is a familiar one. It occurs when an attorney's performance falls below "an objective standard of reasonableness," and there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Luparella v. U.S.*, 335 Fed. Appx. 212, 214 (3d Cir. 2009) citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "(1) that his counsel's performance was deficient; and (2) that he was prejudiced by it." *Brennan v. U.S.*, 322 Fed.Appx. 246, 246-247 (3d Cir. 2009) citing, *Lilly*, 536 F.3d at 195 and *Strickland*, 466 U.S. at 687.

In order to meet the first part of the two-part *Strickland* test, an attorney's performance may be deemed deficient when "'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *U.S. v. Hankerson*, 496 F.3d 303, 301 (3d Cir. 2007), citing *Strickland* at 687. "In assessing counsel's performance, the reviewing court must be 'highly deferential,' and 'indulge a strong presumption that counsel's

3

conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ibid*.

The United States Court of Appeals for the Third Circuit in *Hankerson* further explained that in order to meet the second part of the two-part *Strickland* test:

> . . . If a defendant succeeds in satisfying the first component, he must then also show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In the sentencing context, prejudice exists where the deficient performance affected a defendant's sentence. See, e.g., *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (holding that any increase in sentence resulting from deficient performance can constitute prejudice).

*Hankerson*, 496 F.3d at 310-11.

This Court has considered Petitioner's § 2255 Motion according to these standards.

**B. Factual and Procedural Background**

Makozy, a very sophisticated business person, has engaged in a lifetime of fraudulent activities – his latest series of fraudulent acts (described in detail below) – led to a ten-count indictment.

Makozy was indicted on August 25, 2015 in a 10-count indictment which included one count of bankruptcy fraud, six counts of concealment of bankruptcy assets, one count of false bankruptcy declaration, one count of false statement under oath, and one count of money laundering. Each of the counts set forth in the indictment related to Makozy's Chapter 7 Bankruptcy Petition, filed in 2013. This Chapter 7 Bankruptcy Petition was originally filed in the United States Bankruptcy Court For The Southern District Of Florida, but was subsequently transferred to the United States Bankruptcy Court for the Western District Of Pennsylvania.

4

The records from the bankruptcy proceedings and the instant case show that the investigation conducted by the bankruptcy Trustee, and later by federal investigators, determined that Makozy concealed and secretly transferred hundreds of thousands of dollars in real and personal property prior to filing his 2013 Chapter 7 Bankruptcy Petition, as well as during the pendency of his Petition. Simply put, the records show that as part of his scheme to defraud, Makozy attempted to divest himself of his assets.

On January 7, 2016, the Court held a change of plea hearing during which Makozy pled guilty to Count 6 of the indictment charging him with concealment of assets on or about June 21, 2012.[3] Makozy's plea agreement indicates that he acknowledged his responsibility for his conduct which had been charged in counts one through five, and seven through ten, of the indictment. His plea agreement also indicates that Makozy had stipulated that this Court could consider his conduct charged in those other counts when determining an appropriate sentence. At the conclusion of the plea hearing this Court asked Makozy if he was satisfied with his attorney's "advice and representation" and if his attorney had done, or had not done, anything Makozy thought he should or should not have done. Makozy indicated his satisfaction and even stated, "[h]e represented me properly." See doc. no. 65.

After Makozy pled guilty, he was released on bond, and this Court scheduled a sentencing hearing. During the sentencing hearing, the Court, again, asked Makozy if he was satisfied with the advice and representation of his attorney, and Makozy indicated that he was satisfied. At this hearing the Court also noted that Defendant's correct guideline range given his criminal history category of III, and his offense level of 17, was 30 to 37 months of imprisonment. The Court heard oral argument and testimony from Makozy himself, as to

---

[3] It is noteworthy that Makozy's concealment of assets at Count 6 related to the pre-petition transfer of real estate in Cranberry Township, Pennsylvania. Records show that Makozy had purchased this real estate for $121,000.00 through a Sheriff's sale, conveyed this property to his son (a college student at the time) for $1.00 nearly three months prior to filing his 2013 Chapter 7 Bankruptcy Petition, and developed this property into a residence. Makozy's actions in this regard looped his own son into his criminal and fraudulent scheme.

whether an upward or downward variance should be given. Ultimately, the Court applied all of the Section 3553 factors and noted that, Makozy's prior crimes – which were fraud crimes – caused him to arrive at a Criminal History Category of III. The Court, considering the other Section 3553 factors, took special note that Makozy had used his own son to perpetrate his fraud on the United States through his pre-petition transfer of real estate, and thereby put his son at risk of criminal prosecution. At the end of the hearing, Makozy was again released on bond, and permitted to self-report to prison. See doc. no. 66.

Within days of his sentencing, Makozy began to file *pro se* numerous documents with this Court and the United States Court of Appeal for the Third Circuit (despite the fact that he waived his right to do so in his plea agreement), primarily seeking a stay of his term of imprisonment. See doc. nos. 60, 62, 63, 72, 74, 75, 80, 82, 83, and 86. He also filed untimely collaterals attacks. See doc. nos. 88 and 93. As noted his current Section 2255 Motion is timely but again, he seeks a "stay" of his prison sentence.[4]

### C. Discussion

#### 1. Evidentiary Hearing

The records in this case show conclusively that Makozy is not entitled to an evidentiary hearing. As noted above, this Court must accept the truth of Makozy's factual allegations unless they are clearly frivolous on the basis of the existing record. As discussed below in greater detail, this Court cannot accept as true the factual allegations asserted by Makozy because most of them are contradicted by the record, and/or are inherently incredible and/or are conclusory rather than statements of fact.

---

[4] The Court in one of its prior, post-sentencing Orders prompted by Makozy's requests for a "stay" of his sentence, explained that Makozy failed to meet the criteria under 18 U.S.C.A. § 3143 and *United States v. Miller,* 753 F.2d 19 (3d Cir. 2012), and thus, was not entitled to such relief.

### 2. Makozy's Section 2255 Ineffective Assistance Claims

Makozy's Section 2255 Petition lists 14 "claims" of ineffective assistance of counsel. Each of those "claims" will be addressed either separately or as a collective.

#### *Claim 1:*

Makozy alleges that his attorney was ineffective for his failure to: (1) call his bankruptcy attorneys as witnesses, and (2) proffer transcripts from the bankruptcy proceedings as evidence in this case. According to Makozy, had the testimony and transcripts been proffered in this case, this Court would have concluded that Makozy did not understand what he was doing when he filed *(pro se)* his bankruptcy documents and that his Florida and Pennsylvania bankruptcy attorneys would have supported his contention that he "did not know what he was doing" when he filed his bankruptcy documents and then made several material misrepresentations to the Trustee(s) about his assets during the 341 proceedings. Makozy's theory in this regard is that because "he did not know what he was doing" when he filed his bankruptcy documents or falsely testifying under oath, he "never would have been charged" (meaning indicted) in this case.

This argument fails for several reasons. First, Makozy pled guilty to the pre-petition transfer of the Cranberry Township property. His guilty plea contains an admission that he did so to conceal a specific asset from a United States Bankruptcy Court. Nothing contained within the bankruptcy transcripts or from the lips of Makozy's bankruptcy attorneys could alter that fact.

Second, Makozy (of his own volition) provided the Court with email correspondence between his criminal attorney in these proceedings and himself. The correspondence shows that Makozy made his attorney aware that he wanted his bankruptcy attorneys subpoenaed to testify during his criminal proceedings, and the email indicates that the two would "talk" about the subpoenas at a later date. Ultimately, a decision was reached not to subpoena the bankruptcy attorneys, because the bankruptcy attorneys did not appear to testify before this Court. Given that the testimony of the attorneys could not "prove" Makozy should not have been indicted in this matter,

his argument in this regard is a meritless claim. Accordingly, Makozy's criminal defense attorney (Marty Deitz), who is an accomplished and experienced criminal defense attorney, likely made a decision which, under the circumstances presented here, is not subject to collateral attack. *See Simon v. Gov't of Virgin Islands*, 116 F.Supp. 3d 529, 571-2 (D. V.I. 2015) ("The issues upon which Simon bases his ineffective assistance claim . . . have already been discussed and found to be without merit . . . [and] therefore, cannot form the basis for a successful ineffective assistance of counsel claim."). *See also*, *Lafler v. Cooper*, 566 U.S. 156, 167 (2012), relying upon *Lockhart v. Fretwell*, 506 U.S. 364, 373 (1993) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, Fretwell could not demonstrate an error entitling him to relief.").

Finally, as this Court stated during the sentencing hearing, given Makozy's prior criminal history which spanned two decades and included previous crimes of fraud, and considering his overall scheme in this case, his actions were nothing short of intentional – not inadvertent or accidental – attempts to defraud the United States Bankruptcy Courts and avoid paying (or to delay paying) a judgment related to one of his companies' fraud on the United States Department of Labor. Specifically, this Court noted that Makozy's deliberate actions which led to the criminal charges in this case, appeared to be a continuation of his criminal behavior for which he had to be imprisoned.

### *Claims 2 and 3:*

Makozy asserts two claims that his counsel was ineffective by not preventing Makozy from pleading guilty to Count 6 of the indictment, which led to a Criminal History Category of "III." With respect to both of these claims this Court discussed these matters in great detail during the sentencing hearing. Nevertheless, the Court will again re-address the matters herein.

As to Claim 2, Makozy argues that his email evidence, dated April 13, 2016, proves that "[h]e got the government to agree to Count 7." Makozy's argument in this regard is completely meritless. The email exchange Makozy references occurred between him and his attorney over three months <u>after</u> Makozy signed a plea agreement with the Government and pled guilty in open Court to

8

Count 6 of the indictment. There is nothing in this email exchange that suggests the Governement agreed to Count 7. In fact, during the sentencing hearing this Court stated:

> [The] Court has also reviewed the government's sentencing memorandum and the defendant's sentencing memorandum. These two documents indicate that when the government and the defendant were negotiating a plea agreement, both parties assumed that the defendant's criminal history category would be a Category I, not a Category III as the PSR accurately reflects.
>
> The main reason the parties believe[d] the defendant would have a Category I criminal history was due to the offense dates of two of defendant's prior offenses. The parties thought that because these two offenses were old, that the two offenses would not count for the purposes of sentencing. However, defendant's parole date from one of the two offenses and his prison release date from the second offense were within the Sentencing Guidelines' timeframe and, thus, the two prior offenses must be considered when determining defendant's criminal history category.
>
> [The] Court finds the PSR properly characterizes defendant with a Criminal History Category III.

Doc. no. 66, p. 4. As stated above, and was made clear during the sentencing hearing, the government never agreed to allow Makozy to "switch" his plea of guilty from Count 6 to Count 7 as Makozy now argues in Claim 2.

Relatedly, Makozy contends in Claim 3 that his attorney never asked for a "re-calcuation" of his offense level. This too is largely inaccurate. The Court stated the following regarding Makozy's offense level:

> The Court also notes for the record there was no objection to defendant's Offense Level of 17. If the defendant would have been classified as a person with a Criminal History Category of I and an Offense Level of 17, his guideline range would have been 24 to 30 months.
>
> As a defendant with a Category III Criminal History Category and an Offense Level of 17, his guideline range for imprisonment is 30 to 37 months.
>
> Although the Court has determined that the correct guideline range is 30 to 37 months imprisonment based upon a Criminal History Category III and Offense Level of 17, the Court will, of course, entertain argument from counsel as to whether the Court should vary upward or downward from this range as the Court stated in its colloquy at the plea hearing.

Doc. no. 66, p. 4-5.

Moreover, Makozy's attorney argued heartily for a downward departure and Makozy himself provided testimony as to why the Court should impart a sentence below the guideline range. To that end the following was stated:

> [By Attorney Deitz]: As the Court is aware, this is a bankruptcy fraud-type case. Mr. Makozy pled guilty to concealing assets.
>
> What happened in this case is he filed bankruptcy and he acknowledged and accepted responsibility for concealing certain assets.
>
> During the course of the bankruptcy, the Trustee hired counsel and the Department of Labor hired counsel and adversary complaints were filed against Mr. Makozy. During the course of the litigation of these complaints, Mr. Makozy reached a settlement with the Trustee and a variety of payments were made.
>
> Prior to being indicted in this case, he paid a hundred thousand dollar payment to the trustee during the course of the negotiation. During the terms of the settlement agreement, he attempted to secure financing to pay the rest back. Ultimately, he paid back the Department of Labor debt and through the bankruptcy, the LVNV funding was paid and American Info Source was paid.
>
> THE COURT: Let me interrupt you for a moment.
>
> \*   \*   \*
>
> THE COURT: Do you want to speak to me on the sentence now, please.
>
> MR. DIETZ: Yes.
>
> You'll hear from Mr. Makozy. He'll tell you he accepts responsibility. He made a colossal mistake in this case.
>
> Prior to being indicted in this case, prior to being charged, he was sued during the course of the bankruptcy. He entered into negotiations with the Trustee, with the Department of Labor, made a substantial payment of a hundred thousand dollars to the bankruptcy estate prior to being charged.
> He, pursuant to the terms of the settlement agreement that he reached, he paid back the Department of Labor.
>
> As I indicated to the Court, the only outstanding debt at this time is the IRS. Judge, I have that money sitting in my IOLTA account to pay that debt. It is there. We can do it.
>
> We stepped up and tried to make things as right as possible before he was charged in this case. I ask the Court to consider that.

10

As the Court knows, I do a lot of this white collar work, and there are a lot of people that do not pay debts back at the time we get to sentencing. So, I ask the Court to consider that in imposing sentence.

Judge, Mr. Makozy is married. He has children. As I indicated, he accepts responsibility for what he did here. He is 60 years old.

You have the benefit of the Presentence Investigation Report. He has some health issues. I would ask the Court in this case -- I don't want to rehash everything I set forth in my sentencing memorandum either. The Court has had the benefit of that and indicated has read it.

What I would ask you to consider in this case that makes it unusual is that Mr. Makozy did pay back all the debts. He agreed to pay them all back prior to being charged. Because of the way of the timing of the case proceeding, ultimately, all debts will be paid after he was charged in this case. I ask the Court to consider that. That's unusual. That doesn't typically happen in these types of cases.

He is married. He has deep concerns about his wife in the event he is incarcerated. He does not believe she will be able to financially survive. He is the primary breadwinner in the family.

He has two children. They are both in college. He is concerned about their ability to remain in college if he is incarcerated.

I will defer to Mr. Makozy. I know he has some comments he would like to make to the Court.

         \*   \*   \*

[BY MAKOZY]: Your Honor, I don't know where to begin. I know I screwed up. I messed up bad. I come forward -- yes, I did go and do what is outlined in there.

I came forward. I did everything that my attorneys asked me to do. I went and I paid the debt according to the agreement. They asked me -- they provided me with the agreement with the government. I paid it. I didn't wait until I got indicted. I started to pay it ahead of time.

I went -- it wasn't -- you know, it was within days that I went and started to pay after the agreement. I wasn't even indicted yet and I paid a hundred thousand dollars out.

I got indicted and my wife was trying to get a loan for the house. She got terminated from her job. We couldn't get the loan. I had to go to a high risk company. We got the mortgage there but ultimately, we went and we paid the entire amount of money that was in that settlement
agreement.

11

> There's now a mortgage payment that has to be paid. I let down my wife, my children, for my actions there and the worse thing that is going to happen is I get incarcerated, and my wife can't afford to make that mortgage payment, and they are going to take the house then.
>
> I'm asking you to please have mercy on me, give me protection. If I survive the probation -- don't give me a year, give me ten years. I know I'm not going to do anything wrong. I know I screwed up really bad. I'm saying I'm sorry. I said I was sorry in the past. I'm just asking you now to have mercy on me now, Your Honor.
>
> THE COURT: Thank you, sir.

Doc. no. 66, p. 8-15.

Despite the efforts made by Makozy and his attorney to convince this Court that a downward variance was in order, and despite the fact that the Government conceded that a sentence calculated with an Offense Level of 17[5] and a Criminal History Category of "I," as opposed to "III" would yield an acceptable guideline range of 24-30 months imprisonment, this Court determined that the appropriate imprisonment term was 30 months. The Court concluded as follows:

> Court notes, first, selecting Count 6 as to the count which he plead guilty was defendant's choice.
>
> Secondly, the Court notes although neither counsel for the government nor defendant had defendant's release dates from his two prior offenses, defendant could have provided this information to them during the plea negotiations.
>
> Finally, the Court finds that the 30-month imprisonment is an appropriate number of months to imprison this defendant regardless of whether he had a Criminal History of I or III for the following reasons: This crime is the most recent of defendant's crimes. His prior crimes were also crimes of fraud. In this instance, the Court finds the defendant devised a scheme to defraud the bankruptcy court to make himself judgment proof to his creditors to whom he owed hundreds of thousands of dollars of unpaid judgments and tax liens.

Doc. no. 66, p. 25.

---

[5] Specifically regarding Makozy's offense level calculation set forth in Claim 3, his suggested numbers are without foundation. First, he concedes that his base offense level was properly reflected in the PSR as a "6." However, Makozy contends that he should not have been assessed the additional "12" point increase for the specific loss of more than $250,000 but less than $500,000 under U.S.S.G. § 2B1.1(b0(1)(G). Makozy essentially argues that because he repaid the value of some of the assets he hid and paid his judgment to the Department of Labor (only after he was caught hiding assets and avoiding payment of the judgment), there should be "0" point increase. As noted by the Government in its brief, Makozy appears to conflating "loss" with "restitution." Makozy's argument, like his other arguments in Claims 1-3, is without merit and thus, his attorney had no obligation to raise such a meritless argument. *See Laffler* and *Lockhart, supra.*

12

*Claim 4*:

Next, Makozy argues that his attorney was ineffective for failing to inform this Court that some of the properties he tried to conceal from the Bankruptcy Court had been listed for sale for four years prior to his filing for bankruptcy. This claim is meritless because Makozy actually sold the Cranberry Township property (set forth in Count 6 of the Indictment) during the pendency of his bankruptcy. Makozy pled guilty to Count 6 relating to the intentional actions he took with respect to this property and his misrepresentations to the bankruptcy court about the property. Accordingly, the amount of the time this property was on the market prior to Makozy's transfer of the property to his son is of no moment, and thus, his attorney cannot be said to have been "ineffective."

*Claim 5*:

This claim suggests that Makozy's attorney was ineffective because he failed to argue against the amount of restitution this Court determined that Makozy owed to the IRS. Makozy's Claim 5 also demands that this Court "order the money taken to be returned to the defendant by the IRS."

The Court notes that this is the second time this Court has heard Makozy's argument that he has been improperly ordered to repay the IRS. See doc. no. 74. Both times, Makozy has argued that his debt to the IRS was "discharged" through his bankruptcy proceedings. As noted by the Government during the sentencing hearing and again in its response to the instant Section 2255 Motion, secured tax liens are not dischargeable through bankruptcy. In addition, this Court also incorporates by reference the substance of its Order filed at doc. no. 79 which further explains the validity of the restitution it ordered Makozy to pay to the IRS.

Because this is yet another meritless argument, Makozy's attorney cannot be said to have provided ineffective assistance in this particular regard.

*Claims 6-10 and 12*:

In each of these claims, Makozy argues that his attorney was ineffective because he failed to object to the "lies" told by the Government's attorney during the sentencing hearing and/or failed to object to Government's attorney's statements which would cast Makozy in a negative light.

At the outset, this Court notes that all factual averments asserted by the Government's attorney during the sentencing were either substantiated by the PSR and its supporting documentation and/or bankruptcy court records. Arguments made by either party are considered by the Court but are not accepted as fact.

Next, this Court provided a lengthy statement of reasons for imposing the sentence it did related to Makozy's plea in this case. See doc. no. 66 p. 22-36. In so doing, this Court recited each of the Section 3553 factors and discussed in great detail: (1) the nature and circumstances of the offense, specifically how Makozy's actions in the instant matter both before this Court and the Bankruptcy Court impacted his sentence; (2) how Makozy's prior criminal history and the nature of his prior crimes affected Court's decision with respect to his sentence; (3) how Makozy's family obligations, his upbringing and social history influenced this Court's decision with respect to his sentence; and (4) his personal characteristics including his physical health, his education and employment histories.

This Court concluded after giving all of the requisite factors due consideration that the sentence – meaning the term of imprisonment, the term of supervised release, and the restitution to be paid – was appropriate. Nothing that the Government "argued" to which Makozy's counsel failed to "object" resulted in prejudice to Makozy. Accordingly all of these claims are without merit and cannot form the basis of a collateral attack for ineffective assistance of counsel.

*Claim 11*:

Makozy claims that his attorney was ineffective because over a decade ago he represented Melissa Pacholski. The Court takes judicial notice that in 2004, Melissa Pacholski, through her attorneys, filed a civil Complaint against A-1 Mortgage. This Court was assigned the matter. Plaintiff was represented by Anthony Mariani and attorney Dietz, who, as noted, was counsel for Makozy in the instant action. The civil lawsuit filed by Pacholski incepted by way of a complaint field on September 17, 2004, alleging violations of the Fair Labor Standard

Act. It was resolved by way of a settlement following a mediation session with the late Magistrate Judge Amy Hay on December 3, 2004.   See docket no. 2:2004cv1429.

Makozy's claim that Dietz, his counsel in this criminal case, was ineffective because over 13 years ago, Dietz represented a former employee of A-1 in a civil lawsuit is meritless.

### D. Conclusion

Makozy is not entitled to have his sentence overturned based upon the issues raised in his Section 2255 Motion.  Doc. no. 97.  Accordingly, Petitioner's Section 2255 Motion must be denied.  No certificate of appealability shall issue.

## II.  Defendant's Motion to Stay Sentence

Because this Court has determined that Makozy is not entitled to any relief through his Section 2255 Motion, there is likewise no basis to stay his sentence.

An appropriate Order as to both Motions filed by Makozy follows.

# ORDER

AND NOW, this 10th day of May, 2017, it is hereby ORDERED, ADJUDGED, and DECREED that Petitioner's Amended Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 (doc. no. 97) is hereby **DENIED**.

In addition, this 10th day of May, 2017, it is hereby ORDERED, ADJUDGED, and DECREED that Petitioner's Motion to Stay Sentence (doc. no. 99) is hereby **DENIED**.

No certificate of appealability shall issue.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel

and

Gregory M. Makozy
#05730-068
FCI Miami\Satellite Camp
P.O. Box 779800
Miami, FL 33177